IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

```
FILED
JAN - 7 2010
CLERK, U.S. DISTRICT COURT
     NORFOLK, VA
```

TRAVCO INSURANCE COMPANY,          )
                                   )
            Plaintiff,             )
                                   )
v.                                 )   Civil Action No.: _2:10cv 14_
                                   )
LARRY WARD,                        )
                                   )
            Defendant.             )
                                   )

## COMPLAINT

Plaintiff TravCo Insurance Company ("TRAVCO") alleges, on personal knowledge as to

itself and its own acts, and on information and belief as to all other matters, as follows:

### Nature of the Action

1.      This is an action for a declaratory judgment under a homeowners insurance policy

TRAVCO issued to Defendant Larry Ward ("Mr. Ward"), bearing Policy No. 981281474 633 1

(the "Policy").  TRAVCO seeks a declaratory judgment that there is no coverage under the

Policy for an insurance claim made by Mr. Ward, relating to Chinese-made drywall installed

during the construction of his home.  A certified copy of the Policy is attached as Exhibit A

hereto.

2.      While TRAVCO understands the unfortunate circumstance that Mr. Ward and his

family have encountered, responsibility for the drywall and its alleged effects on Mr. Ward's

home does not lie with TRAVCO.  Coverage under the TRAVCO Policy is limited to the terms

of the insurance contract and is subject to the exclusions and conditions contained therein.

Coverage under the TRAVCO Policy cannot be made to exist when the damage being claimed was simply not insured against.

### Parties

3.     Plaintiff TRAVCO is a corporation incorporated under the laws of Connecticut with its principal place of business in Hartford, Connecticut.

4.     Defendant Larry Ward is an individual domiciled in the State of Virginia, with a principal residence in Virginia Beach, Virginia.

### Jurisdiction and Venue

5.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the parties are citizens of different States and the amount in controversy exceeds $75,000, exclusive of interest and costs.  TRAVCO is a citizen of Connecticut, and Mr. Ward is a citizen of Virginia.  Mr. Ward is seeking to recover under the Policy for the cost of replacing all of the drywall in his residence, as well as for claimed damage to air conditioning equipment, flat screen televisions and a garage door.  The cost of replacing the items claimed by Mr. Ward exceeds $75,000.  The Policy contains limits of $400,000 for the dwelling, $40,000 for other structures, $280,000 for personal property and $120,000 for loss of use.

6.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) because Mr. Ward resides in this District, and the insured property at issue is located in this District.

7.     Pursuant to Local Civil Rule 3(C), venue is proper in the Norfolk Division of this Court because Mr. Ward resides in the Norfolk Division, and the insured property at issue is located in the Norfolk Division.

## Facts

8.      On or about May 1, 2007, Mr. Ward purchased a newly-constructed residence located at 214 80th St. #B, Virginia Beach, Virginia 23451 (the "Ward Residence").

9.      The Ward Residence was insured by the Policy during the policy period of May 7, 2007 to May 7, 2008, and by renewal policies issued by TRAVCO for the policy periods of May 7, 2008 to May 7, 2009 and May 7, 2009 to May 7, 2010.

10.     At the time of the construction of the Ward Residence, walls within the Ward Residence were constructed using sheets of drywall manufactured in China (the "Drywall").

11.     At some time prior to August 2009, Mr. Ward began to experience certain problems at the Ward Residence. He later reported to TRAVCO that these problems included damage to and malfunctioning of air conditioning equipment, damage to the garage door, damage to flat screen televisions and odorous fumes in the residence.

12.     Upon information and belief, between May 2009 and August 2009, Mr. Ward investigated whether the reported problems at the Ward Residence were associated with or caused by the Drywall.

13.     Commencing in or before August 2009, Mr. Ward had his home inspected and tested by Zdenek Hejzlar, Ph.D. ("Hejzlar") of Engineering Systems Inc. of Fort Myers, Florida, who subsequently prepared a report of his investigation (the "Hejzlar Report"). A true and correct copy of the Hejzlar Report as provided by Mr. Ward to TRAVCO is attached as Exhibit B hereto.

14.     Hejzlar was retained by Mr. Ward and/or his counsel to inspect the drywall in the Ward Residence prior to August 26, 2009.

- 3 -

15.    Hejzlar has represented that he is "a certified Safety Professional (CSP), Chemical Engineer (CChE), and Professional Chemist (CPC) . . . ." (Hejzlar Report, ¶ 2.)

16.    Hejzlar has further represented that: "I have been working on issues concerning Chinese Drywall and sulfur emissions from the product with the State of Florida, the Consumer Product Safety Commission, and various other private parties for over a year. I have personally investigated over 700 homes and condominiums reporting problems associated with Chinese Drywall. I have also analyzed data related to the presence of Chinese Drywall in over 200 other homes." (Hejzlar Report, ¶ 3.)

17.    Upon information and belief, on or about August 26, 2009, Hejzlar "performed a visual and photographic inspection at the Ward residence located at 214-B 80th Street, Virginia Beach, Virginia, and took physical samples of impacted copper and drywall located in the home to be analyzed in a laboratory." (Hejzlar Report, ¶ 6(a).)

18.    Upon information and belief, on or about August 26, 2009 and August 31, 2009, Arthur Greason, working at the direction of and under the supervision of Hejzlar, "perform[ed] a visual and photographic inspection of the Ward residence and took physical samples of impacted copper and drywall located in the house to be analyzed in the laboratory" under the supervision of Hejzlar. (Hejzlar Report, ¶ 6(b).)

19.    Upon information and belief, Greason found that the Ward Residence "shows evidence of corrosion of the HVAC coils and various wiring throughout the home . . . The AC coils had not been replaced according to Mr. Ward, however, the freon was recharged about 6 times in each of his two units. The sulfuric odor permeates the entire residence." (Hejzlar Report, at Ex. E thereto, ¶ 3.)

20.     Hejzlar concluded that the Ward Residence "demonstrates [a] pervasive sulfur like odor." (Hejzlar Report, ¶ 7(a).)

21.     Hejzlar concluded that in the Ward Residence "[t]here is drywall in the home with characteristic identifying marks ('Venture Supply, Inc MFG. Taihe China') known to be Chinese Drywall." (Hejzlar Report, ¶ 7(b).)

22.     Hejzlar concluded that in the Ward Residence "[t]here is widespread impact to susceptible metal surfaces (e.g., copper, silver, chrome) such as HVAC coils, electrical wiring in outlets, ground wires and other metallic surfaces." (Hejzlar Report, ¶ 7(c).)

23.     Hejzlar concluded that in the Ward Residence there was a "sulfur impact on the metal associated with emissions from the Chinese Drywall." (Hejzlar Report, ¶ 7(d).)

24.     Hejzlar concluded that, with respect to the Ward Residence, "laboratory analysis of the drywall demonstrates a 'fingerprint' of the chemical elements which is characteristic of Chinese Drywall." (Hejzlar Report, ¶ 7(e).)

25.     Hejzlar concluded that "the Ward home has Chinese Drywall which has off-gassed at levels sufficient to cause significant impacts." (Hejzlar Report, ¶ 7(f).)

26.     On or about September 23, 2009, Mr. Ward reported a claim to TRAVCO, seeking coverage for damages that he claimed arose from the Drywall in the Ward Residence.

27.     Mr. Ward informed TRAVCO that the presence of the Drywall had caused damage to air conditioning equipment, a garage door, and flat screen televisions, as well as odorous fumes and family health issues.

28.     Mr. Ward informed TRAVCO that the sulfur level of the Drywall had been measured with a result of 280.  He advised that the normal level of sulfur in drywall is 13 to 14.

29.     TRAVCO investigated and evaluated Mr. Ward's claim by, among other things, visiting the Ward Residence, evaluating the claimed damage, obtaining and testing a sample of the Drywall, and obtaining an air sample.

30.     On or about December 2, 2009, while TRAVCO's investigation of Mr. Ward's claim was ongoing, Mr. Ward provided TRAVCO with a copy of the Hejzlar Report in support of his claim.

31.     TRAVCO's investigation verified many of the assertions made by Mr. Ward about conditions at his home and several of the findings of the Hejzlar Report. TRAVCO representatives who visited the Ward Residence detected a noticeable odor similar to rotten eggs. TRAVCO's investigation confirmed that certain of the Drywall in the Ward Residence that was accessible contained markings indicating that it was made in China. Testing of the sample of Drywall confirmed the presence of compounds consistent with those found by governmental agencies and other parties in known Chinese-made drywall. Testing of the air sample revealed that it contained an elevated level of carbonyl sulfide which is not ordinarily found in a typical home environment.

32.     Although TRAVCO confirmed the conditions at the residence as claimed by Mr. Ward, TRAVCO determined that there was no coverage for Mr. Ward's claim under the Policy for the claim submitted. On January 7, 2010, TRAVCO informed Mr. Ward, by letter, of its coverage determination. A true and correct copy of TRAVCO's letter to Mr. Ward denying coverage is attached as Exhibit C hereto.

33.     The Hejzlar Report submitted by Mr. Ward in support of his claim indicates the Drywall in the Ward Residence contains a defect that is not visible.

34.     The Hejzlar Report submitted by Mr. Ward in support of his claim indicates the Drywall in the Ward Residence contains a defect that is not readily discoverable.

35.     The Hejzlar Report submitted by Mr. Ward in support of his claim indicates the Drywall in the Ward Residence is discharging or releasing fumes.

36.     The Hejzlar Report submitted by Mr. Ward in support of his claim indicates the Drywall in the Ward Residence is discharging or releasing a gas or gases that are not emitted by ordinary American-made drywall.

37.     The Hejzlar Report submitted by Mr. Ward in support of his claim indicates the Drywall in the Ward Residence is discharging or releasing a gas or gases that irritate human beings present in the Ward Residence.

38.     The Hejzlar Report submitted by Mr. Ward in support of his claim indicates the Drywall in the Ward Residence is discharging or releasing a gas or gases that are irritants.

39.     The Hejzlar Report submitted by Mr. Ward in support of his claim indicates the Drywall in the Ward Residence is discharging or releasing a gas or gases that render the air in the Ward Residence impure.

40.     The Hejzlar Report submitted by Mr. Ward in support of his claim indicates the Drywall in the Ward Residence is discharging or releasing a gas or gases that have contaminated the air in the Ward Residence.

41.     The Hejzlar Report submitted by Mr. Ward in support of his claim indicates the claimed damage to the air conditioning equipment at the Ward Residence was caused by the presence of the Drywall.

42.     The Hejzlar Report submitted by Mr. Ward in support of his claim indicates the claimed damage to the air conditioning equipment at the Ward Residence would not have occurred in the absence of the Drywall.

43.     The Hejzlar Report submitted by Mr. Ward in support of his claim indicates the claimed damage to the air conditioning equipment at the Ward Residence was caused by the discharge or release of a gas or gases from the Drywall.

44.     The Hejzlar Report submitted by Mr. Ward in support of his claim indicates the claimed damage to the air conditioning equipment at the Ward Residence was caused by corrosion.

45.     Mr. Ward has indicated that the claimed damage to the garage door at the Ward Residence was caused by the presence of the Drywall, and/or the discharge or release of a gas or gases from the Drywall.

46.     The claimed damage to the flat screen televisions at the Ward Residence was not caused by any of the following causes:  fire; lightning; windstorm; hail; explosion; riot; civil commotion; aircraft; vehicles; smoke; vandalism; malicious mischief; theft; falling objects; weight of ice, snow or sleet; discharge or overflow of water or steam; sudden and accidental tearing apart, cracking, burning or bulging of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water; freezing; volcanic eruption; or collapse of a building or any part of a building.

47.     The claimed damage to the flat screen televisions at the Ward Residence was not caused by sudden and accidental damage from artificially generated electrical current.

48.     The flat screen televisions at the Ward Residence are appliances.

49.     The flat screen televisions at the Ward Residence are electronic apparatus.

- 8 -

50.   Mr. Ward has indicated that the claimed damage to the flat screen televisions at the Ward Residence was caused by the presence of the Drywall, and/or the discharge or release of a gas or gases from the Drywall.

51.   TRAVCO's investigation did not reveal anything that contradicts the Hejzlar Report submitted by Mr. Ward in support of his claim, and, for purposes of his claim, TRAVCO accepts the findings and conclusions of the report set forth in the paragraphs above.

**Applicable Policy Provisions – Coverage for the Dwelling and Other Structures**

52.   With respect to Coverage A – Dwelling and Coverage B – Other Structures, the Policy's grant of coverage provides that:

1.  We insure against risk of direct physical loss to property described in Coverages A and B.

2.  We do not insure, however, for loss:

    a.  Excluded under Section I – Exclusions; or

    b.  Caused by:  [certain enumerated causes]

(Exhibit A, Form HO-3 VA (12-06), at 8.)

53.   The Policy provides that the following causes of loss are not insured with respect to Coverage A – Dwelling and Coverage B – Other Structures:

2.  We do not insure, however, for loss:
    . . .
    b.  Caused by:
    . . .
    (6) Any of the following:
    . . .
    (b) Latent defect, inherent vice, or any quality in property that causes it to damage or destroy itself;
    (c) Smog, rust or other corrosion, mold, fungi, wet or dry rot;
    . . .
    (e) Discharge, dispersal, seepage, migration, release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against under Coverage C.

- 9 -

> Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed;
>
> . . .
>
> Under **2.b.** above, any ensuing loss to property described in Coverages A and B not excluded by any other provision in this policy is covered.

(Exhibit A, Form HO-3 VA (12-06), at 8-9, as modified by Form HO-85 VA (12-06), at 2.)

54.     The Policy contains the following exclusion, which applies to all coverage parts:

**B.** We do not insure for loss caused by any of the following.  However, any ensuing loss which is not excluded by any other provision in this policy is covered.

. . .

    3. Faulty, inadequate or defective:

       . . .

      **b.** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading compaction;

      **c.** Materials used in repair, construction, renovation or remodeling;

    . . .

    of part or all of any property whether on or off the "residence premises".

(Exhibit A, Form HO-3 VA (12-06), at 11-12.)

## Applicable Policy Provisions – Coverage for Personal Property

55.     With respect to Coverage C – Personal Property, the Policy's grant of coverage

provides, in pertinent part, as follows:

> We insure for direct physical loss to the property described in Coverage C caused by any of the following perils, unless the loss is excluded in Section I – Exclusions.
>
> **1. Fire or lightning.**
> **2. Windstorm or hail.**
> . . .
> **3. Explosion.**

4. **Riot or civil commotion.**
5. **"Aircraft".**
. . .
6. **Vehicles.**
7. **Smoke.**
8. **Vandalism or malicious mischief.**
9. **Theft.**
. . .
10. **Falling Objects.**
. . .
11. **Weight of Ice, Snow or Sleet.**
. . .
12. **Accidental Discharge Or Overflow Of Water Or Steam.**
. . .
13. **Sudden And Accidental Tearing Apart, Cracking, Burning Or Bulging.**
   This peril means sudden and accidental tearing apart, cracking, burning or
   bulging of a steam or hot water heating system, an air conditioning or
   automatic fire protective sprinkler system, or an appliance for heating water.
   We do not cover loss caused by or resulting from freezing under this peril.
14. **Freezing**
. . .
15. **Sudden And Accidental Damage From Artificially Generated Electrical
   Current.**
   This peril does not include loss to tubes, transistors, electronic components or
   circuitry that are a part of appliances, fixtures, computers, home entertainment
   units or other types of electronic apparatus.
16. **Volcanic Eruption.**
. . .
17. **Collapse of a Building or Any Part of a Building.**
. . .

(Exhibit A, Form HO-3 VA (12-06), at 9-10.)   The exclusion set forth in Paragraph 54 above

also applies to Coverage C.

<u>**Application of the Policy to Mr. Ward's Claim for
Removal and Replacement of Chinese-Made Drywall**</u>

56.      There is no coverage for the removal and replacement of the Drywall in the Ward

Residence because the Drywall has not sustained a "direct physical loss," and therefore does not

fall within the grant of coverage in the Policy.

57.      If there were a "direct physical loss" to the Drywall, it would constitute a loss

caused by a "[l]atent defect, inherent vice, or any quality in property that causes it to damage or

destroy itself," and therefore would not be covered under provision 2.b.(6)(b) of "SECTION I – PERILS INSURED AGAINST," as quoted in Paragraph 53 above.

58.     If there were a "direct physical loss" to the Drywall, it would constitute a loss "caused by . . . [f]aulty, inadequate or defective . . . [m]aterials used in repair, construction, renovation or remodeling," and therefore would be excluded under Exclusion B.3., as quoted in Paragraph 54 above.

59.     The presence of the gas and odor in the Ward Residence does not constitute a "direct physical loss," and therefore does not fall within the grant of coverage in the Policy.

60.     If the presence of the gas and odor were deemed to be a "direct physical loss," it would constitute a loss caused by a "[l]atent defect, inherent vice, or any quality in property that causes it to damage or destroy itself," and therefore would not be covered under provision 2.b.(6)(b) of "SECTION I – PERILS INSURED AGAINST," as quoted in Paragraph 53 above.

61.     If the presence of the gas and odor were deemed to be a "direct physical loss," it would constitute a loss "[c]aused by . . . [f]aulty, inadequate or defective . . . [m]aterials used in repair, construction, renovation or remodeling," and therefore would be excluded under Exclusion B.3., as quoted in Paragraph 54 above.

62.     If the presence of the gas and odor were deemed to be a "direct physical loss," it would constitute a loss "[c]aused by . . . [d]ischarge, dispersal, seepage, migration, release or escape of pollutants," which is not caused by a Peril Insured Against under Coverage C, and is therefore excluded under provision 2.b.(6)(e) of "SECTION I – PERILS INSURED AGAINST," as quoted in Paragraph 53 above. The gas or gases that have formed in the Ward Residence constitute a "gaseous . . . irritant or contaminant," as well as "fumes," and therefore constitute "pollutants" within the meaning of the provision quoted above.

**Application of the Policy to Mr. Ward's Claim for**
**Damage to Air Conditioning Equipment and Garage Door**

63.     The claimed damage to the air conditioning equipment and garage door in the Ward Residence was caused by the Drywall. It thus was caused by a "[l]atent defect, inherent vice, or any quality in property that causes it to damage or destroy itself," and is therefore not covered under provision 2.b.(6)(b) of "SECTION I – PERILS INSURED AGAINST," as quoted in Paragraph 53 above.

64.     The claimed damage to the air conditioning equipment and garage door in the Ward Residence was caused by the Drywall. It thus was "caused by . . . [f]aulty, inadequate or defective . . . [m]aterials used in repair, construction, renovation or remodeling," and is therefore excluded under Exclusion B.3., as quoted in Paragraph 54 above.

65.     The claimed damage to the air conditioning equipment and garage door in the Ward Residence was caused by a gas. It thus was caused by a "[d]ischarge, dispersal, seepage, migration, release or escape of pollutants," which is not caused by a Peril Insured Against under Coverage C, and is therefore excluded under provision 2.b.(6)(e) of "SECTION I – PERILS INSURED AGAINST," as quoted in Paragraph 53 above. The gas or gases that have formed in the Ward Residence constitute a "gaseous . . . irritant or contaminant," as well as "fumes," and therefore constitute "pollutants" within the meaning of the provision quoted above.

66.     The claimed damage to the air conditioning equipment and garage door in the Ward Residence constitutes loss "[c]aused by . . . corrosion," and is therefore not covered under provision 2.b.(6)(c) of "SECTION I – PERILS INSURED AGAINST," as quoted in Paragraph 53 above.

**Application of the Policy to Mr. Ward's Claim for Damage to Flat Screen Televisions**

67.     The flat screen televisions that are the subject of Mr. Ward's claim constitute personal property, which falls under Coverage C in the Policy.  This coverage applies only to loss caused by one or more of the 17 named perils quoted in Paragraph 55 above.

68.     There is no coverage for the claimed damage to the flat screen televisions because Mr. Ward has not demonstrated that the claimed damage was caused by any of the 17 named perils set forth in Paragraph 55 above.

69.     Even if the claimed damage to the flat screen televisions were caused by one of the named perils, it was "caused by . . . [f]aulty, inadequate or defective . . . [m]aterials used in repair, construction, renovation or remodeling," and therefore would be excluded under Exclusion B.3., as quoted in Paragraph 54 above.

## COUNT ONE
### (Declaratory Judgment Pursuant To 28 U.S.C. § 2201)

70.     TRAVCO repeats and realleges the allegations contained in Paragraphs 1 through 69 above, as if fully set forth herein.

71.     Mr. Ward has made a claim for and requested that TRAVCO provide coverage under the Policy for replacement of the Drywall, repair or replacement of the air conditioning equipment, repair or replacement of the garage door, and replacement of the flat screen televisions.

72.     TRAVCO has denied coverage for the claim made by Mr. Ward.

73.     An actual controversy has arisen as to whether, under the terms, conditions, exclusions and limitations of the Policy, TRAVCO has an obligation to provide coverage for the losses claimed by Mr. Ward.

74.     Pursuant to 28 U.S.C. § 2201, TRAVCO is entitled to a declaration that, under the Policies, it has no obligation to provide coverage for the losses claimed by Mr. Ward.

## REQUESTS FOR RELIEF

WHEREFORE, TRAVCO respectfully requests that the Court grant it the following relief:

A.     Enter a declaratory judgment that the Policy does not provide coverage for the cost of removing and/or replacing the Drywall in the Ward Residence;

B.     Enter a declaratory judgment that the Policy does not provide coverage for the damage claimed by Mr. Ward to the air conditioning equipment at the Ward Residence;

C.     Enter a declaratory judgment that the Policy does not provide coverage for the damage claimed by Mr. Ward to the garage door at the Ward Residence;

D.     Enter a declaratory judgment that the Policy does not provide coverage for the damage claimed by Mr. Ward to the flat screen televisions;

E.     Enter a declaratory judgment that the Policy does not provide coverage for any damage caused by the Drywall in the Ward Residence or for any damage caused by the discharge of gas from the Drywall, including but not limited to any damage to wiring and copper components of the home; and

F.     Grant such other relief as this Court deems just and appropriate.

TRAVCO INSURANCE COMPANY

By: _____
               Counsel

John B. Mumford, Jr. (VSB No.: 38764)
Kathryn E. Kransdorf (VSB No.: 74124)
Hancock, Daniel, Johnson & Nagle, P.C.
4701 Cox Road, Suite 400
Glen Allen, Virginia 23060
Tel No.: (804) 967-9604
Fax No.: (804) 967-9888
Email: jmumford@hdjn.com
        kkransdorf@hdjn.com

Stephen E. Goldman
(*pro hac vice* motion to be filed)
Daniel F. Sullivan
(*pro hac vice* motion to be filed)
Wystan M. Ackerman
(*pro hac vice* motion to be filed)
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT 06103-3597
Tel. No.: (860) 275-8200
Fax No.: (860) 275-8299
E-mail: sgoldman@rc.com
        dsullivan@rc.com
        wackerman@rc.com

Counsel for TRAVCO Insurance Company